

**FILED**
AUG 8 2018
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 18 CR 167 GKF |
| | ) | |
| Plaintiff, | ) | **INDICTMENT** |
| | ) | [COUNTS 1 & 2: 42 U.S.C. § 1320a- |
| v. | ) | 7b(b)(1)(A) – Illegal Remuneration for |
| | ) | Health Care Referrals; |
| ADAM GALLARDO | ) | Forfeiture Allegation: 18 U.S.C. |
| ARRENDONDO, | ) | § 982(a)(7) – Health Care Forfeiture] |
| | ) | |
| Defendant. | ) | |

**THE GRAND JURY CHARGES:**

**COUNTS ONE AND TWO**
**[42 U.S.C. § 1320a-7b(b)(1)(A)]**

**ENTITIES**

1. Defendant, **ADAM GALLARDO ARREDONDO**, ("**ARREDONDO**") is a physician licensed in the state of Texas. **ARREDONDO** owned and operated Texas Anesthesia and Pain Management in Waxahachie, Texas with a satellite office in Corsicana, Texas.

2. OK Compounding, LLC (OK Compounding) was an Oklahoma Limited Liability Company located in Skiatook, Oklahoma with its business office in Tulsa, Oklahoma. OK Compounding specialized in the preparation of compounding prescriptions. The majority of the compounding prescriptions filled by OK Compounding were delivered out of state.

3. Pharmacy Providers of Oklahoma (PPOK) is a company that represented independent pharmacies in negotiations with insurance companies. In addition, PPOK

would bill insurance companies and federal healthcare programs for prescriptions filled by its member pharmacies. Therefore, all contracts with insurance companies and federal healthcare programs would be in the name of PPOK and all prescriptions would flow through PPOK. OK Compounding was a member of PPOK.

4. In general, "compounding" was a practice in which a licensed pharmacist or licensed physician combines, mixes, or alters ingredients of a drug or multiple drugs to create a drug tailored to the needs of an individual patient. Compounded drugs were not FDA-approved, that is, the FDA does not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs.

5. R&A Marketing, LLC (R&A Marketing) was a Texas Limited Liability Company located at Houston, Texas. Beginning in September, 2012, R&A Marketing contracted with OK Compounding to recruit physicians to enter into Medical Director Contracts with OK Compounding.

6. In the fall of 2012, R&A Marketing recruited **ARREDONDO** for OK Compounding. On January 1, 2013, **ARREDONDO** signed a Consulting Physician Agreement with OK Compounding. The Agreement stated **ARREDONDO** would provide a list of particular services in exchange for hourly payment. The services included reviewing charts, participating in meetings with pharmacy, developing policies, and being available to answer clinical questions for pharmacy staff and/or treating physicians.

7. **ARREDONDO** did not provide the type of services listed in the Consulting Physician Agreement; rather, he was paid for sending all of his patients' compounding prescriptions to OK Compounding.

## TRICARE

8.  TRICARE provided health care coverage for Department of Defense (DOD) beneficiaries world-wide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors.

9.  Individuals who received health care benefits through TRICARE were referred to as TRICARE beneficiaries. The Defense Health Agency ("DHA"), an agency of the DOD, was the military entity responsible for overseeing and administering the TRICARE program.

10. TRICARE provided coverage for certain prescription drugs, including certain compounded drugs, if the drugs were medically necessary and prescribed by a licensed physician. Express Scripts is the company that administered the TRICARE prescription program. If a beneficiary chose a network pharmacy, the pharmacy would collect any applicable co-pay from the beneficiary, dispense the drug to the beneficiary, and submit a claim for reimbursement to Express Scripts, which would in turn adjudicate the claim and reimburse the pharmacy. To become a TRICARE network pharmacy, a pharmacy agreed to be bound by, and comply with, all applicable State and Federal laws, specifically including those addressing fraud, waste, and abuse.

11. OK Compounding, through PPOK, submitted claims for prescription compounding drugs it dispensed to TRICARE beneficiaries. TRICARE was a "Federal health care program," as defined by 42 U.S.C. § 1320a-7b(f), that affected commerce.

## **MEDICARE**

12. Medicare provided benefits to individuals who were 65 years and older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services, a federal agency under the United States Department of Health and Human Services.

13. Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries." Each beneficiary was given a unique health insurance claim number. Health care providers who provided medical services that were reimbursed by Medicare were referred to as Medicare "providers."

14. To participate in Medicare, a provider was required to submit an application in which the provider agreed to comply with all Medicare-related laws and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number," which was used for processing and payment of claims.

15. A health care provider with a Medicare provider number could submit claims to Medicare to obtain reimbursement for services and products provided to Medicare beneficiaries.

16. Most providers submitted their claims electronically pursuant to an agreement they executed with Medicare in which the providers agreed that they: (a) were responsible for all claims submitted to Medicare by themselves, their employees, and their agents; (b) would submit claims only on behalf of those Medicare beneficiaries who had given their written authorization to do so; and (c) would submit claims that were accurate, complete, and truthful.

17. Medicare Part D provided coverage for outpatient prescription drugs. Medicare beneficiaries were able to obtain Part D coverage through: (1) enrollment in one of many prescription drug plans ("PDP"), which covered only prescription drugs and were offered by qualified private insurance plans (often referred to as drug plan "sponsors"), which received reimbursement from Medicare; or (2) a Medicare Advantage plan that covered both prescription drugs and medical services. A beneficiary was responsible for any deductible or co-payment required under his or her PDP.

18. Medicare reimbursed providers for certain compounded drugs that were medically necessary to the treatment of a beneficiary's illness or injury, were prescribed by a beneficiary's physician or a qualified physician's assistant acting under the supervision of a physician, and were provided in accordance with Medicare regulations and guidelines that governed whether a particular service or product would be reimbursed by Medicare.

19. A pharmacy provider was required to provide certain information when filing claims with Medicare. This information included: identification of the person or entity that provided the medication, identification of the medication that was provided, identification of the prescribing physician, identification of the beneficiary, and the date the prescription was dispensed.

20. OK Compounding, through PPOK, submitted claims for prescription compounding drugs it dispensed to Medicare beneficiaries. Medicare was a "Federal health care program," as defined by 42 U.S.C. § 1320a-7b(f), that affected commerce.

### Department of Labor - Office of Workers' Compensation Programs

21. The Federal Employees' Compensation Act, Title 5, United States Code, Sections 8101, et seq. ("FECA") provided certain benefits to civilian employees of the United States, for wage-loss disability due to a traumatic injury or occupational disease sustained while working as a federal employee (the "FECA program"). The Office of Workers' Compensation Programs ("OWCP"), a component of the Department of Labor ("DOL"), administered the FECA program, which was a federal workers' compensation program focused on return to work efforts.

22. When a qualified employee suffered a work-related injury, the employee filed a claim for coverage with OWCP, which then assigned the claimant an OWCP claim number.

23. To obtain reimbursement for prescription drugs provided to OWCP claimants (hereinafter referred to as beneficiaries), a pharmacy had to submit its prescription claims for payment to OWCP, using the beneficiary's OWCP claim number. By submitting a claim for reimbursement with OWCP, the pharmacy provider certified that the service or product for which reimbursement was sought was medically necessary, appropriate, and properly billed in accordance with accepted industry standards.

24. OWCP would process the claims submitted by the provider, and if all required information was included, OWCP would reimburse the provider in accordance with an established fee schedule.

25. OK Compounding, through PPOK, submitted claims for prescription compounding drugs it dispensed to FECA beneficiaries. The FECA program was a

"Federal health care program," as defined by 42 U.S.C. § 1320a-7b(f), that affected commerce.

27. The Grand Jury hereby incorporates and realleges paragraphs 1 through 25 of this Indictment.

27. On or about the following dates as stated in the table below, in the Northern District of Oklahoma and elsewhere, the defendant, **ADAM GALLARDO ARREDONDO**, did knowingly and willfully solicit and receive, remuneration, that is, checks payable in the amounts set forth below, in return for referring compounding prescriptions to OK Compounding for the furnishing and arranging for the furnishing of compounded topical creams, items for which payment was made in whole or in part by federal programs, TRICARE, Medicare and/or DOL-OWCP.

| COUNT | APPROXIMATE DATE | REMUNERATION |
|---|---|---|
| ONE | August 14, 2013 | Check number 4034, drawn on the OK Compounding IBC Bank Account, in the amount of $10,000, payable to ARREDONDO |
| TWO | September 13, 2013 | Check number 4324, drawn on the OK Compounding IBC Bank Account, in the amount of $10,000 payable to ARREDONDO |

All in violation of 42 U.S.C. § 1320a-7b(b)(1)(A).

## HEALTH CARE FORFEITURE ALLEGATION
### [18 U.S.C. § 982(a)(7)]

The allegations contained in Counts One and Two of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(7).

Upon conviction of the health care offenses alleged in Counts One and Two of this Indictment, as part of his sentence, the defendant, **ADAM GALLARDO ARREDONDO**, shall forfeit to the United States any property, real or personal, constituting or derived from, directly or indirectly, the gross proceeds traceable to such offenses. A criminal forfeiture money judgment shall also be entered in a sum of money in an amount of at least $20,000, representing proceeds obtained as a result of such offenses.

Pursuant to Title 21, United States Code, Section 853(p), as adopted by Title 28, United States Code, Section 2461(c), the defendant shall forfeit substitute property, up to the value of the property described above if, by any act or omission of the defendant, the property described above, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

All pursuant to Title 18, United States Code, Section 982(a)(7).

R. TRENT SHORES
UNITED STATES ATTORNEY

/s/ Melody N. Nelson
MELODY N. NELSON
Assistant United States Attorney

A TRUE BILL

/s/ Grand Jury Foreperson
Grand Jury Foreperson